IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HARVEY PATRICK SHORT,

    Plaintiff,

v.                                Case No. 2:07-cv-00409

JOHN McKAY, Jail Administrator,
South Central Regional Jail,
JOHN KING, Regional Jail Authority, and
LIEUTENANT RICK ROGERS,
SOUTH CENTRAL REGIONAL JAIL,[1]

    Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

By Standing Order, this civil action was referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Beginning September 14, 2005, Plaintiff was incarcerated as a state pre-trial detainee at the South Central Regional Jail (hereinafter "SCRJ"). Since November 1, 2005, Plaintiff has filed eleven actions in this court, ten of which name State and county officials as defendants:

    Short v. Charnock, No. 2:06-cv-00721;
    Short v. Charnock, No. 2:06-cv-00852;

---

[1]South Central Regional Jail is listed on the docket sheet as a party defendant and counsel has filed a motion to dismiss the Jail. Upon review of Plaintiff's Complaint, it appears to the court that Plaintiff did not intend to name the Jail, which is not a suable entity, as a defendant.

>   Short v. PrimeCare Medical-WV, No. 2:06-cv-00933;
>   Short v. State of West Virginia, 2:06-cv-00997;
>   Short v. Carper, No. 2:07-cv-00139;
>   Short v. Carper, No. 2:07-cv-00255;
>   Short v. Bailey-Walker, No. 2:07-cv-00277;
>   Short v. McKay, No. 2:07-00409;
>   Short v. Walls, No. 2:07-cv-00531; and
>   Short v. Green, No. 2:07-cv-00968.

In addition, Short has written and filed several complaints for other inmates at the South Central Regional Jail and, in some instances, signed the names of other persons on court documents. Since late November, 2007, Plaintiff has been housed at the Southwestern Regional Jail.

Plaintiff's Complaint (# 2), filed pursuant to 42 U.S.C. § 1983 on June 28, 2007, alleges that the defendants have retaliated against him by placing him in full restraints on account of his filing lawsuits on behalf of himself and other inmates. He claims that the defendants have discriminated against Plaintiff based on his race and mental disability. (Id. at 4-8). Plaintiff seeks compensatory damages of $250,000 and punitive damages in the amount of $550,000. Id., at 5.

## PENDING MOTIONS

The following motions are pending before the court:

1. Plaintiff's Petition for Injunctive Relief (# 7), filed on July 12, 2007, seeking reclassification to the general population or transfer to another regional jail;

2. Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (# 14), filed on July 31, 2007, to which Plaintiff

filed an Opposition (# 19). After a status conference on October 4, 2007, and a formal notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), set forth in the Order entered October 10, 2007 (# 22), Plaintiff filed another Opposition (# 23) and a memorandum (# 24); and

3. Plaintiff's Motion for Entry of Default Judgment and Affidavit (# 16).

The court will address Defendants' alternative motions first.

<u>Defendants' Motion to Dismiss or for Summary Judgment (# 14)</u>

Defendants move for dismissal or, in the alternative, for summary judgment. They do not differentiate the grounds for either type of motion, leaving the court to guess at their reasoning. The court assumes that Defendants' contention that Plaintiff failed to exhaust the remedies available to him is one of the bases for their motion to dismiss. The court further assumes that the arguments that the Jail is not a suable entity, and that Defendants are protected by the Eleventh Amendment to the Constitution are also to be considered as part of the motion to dismiss.

Even though Defendants have asserted that Plaintiff's allegations fail to state a claim upon which relief can be granted, their reliance on qualified immunity, and on exhibits outside the pleading, convinces the court that these arguments should be considered in the context of their motion for summary judgment, pursuant to Rule 12(b)(6) ("If . . . matters outside the pleading

3

are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .").

**Motion to Dismiss - Exhaustion of Administrative Remedies**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. Id. at 741. In Booth, the Court required exhaustion even where the grievance process does not

permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. Id.

In Porter v. Nussle, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong." Not only must a prisoner exhaust his administrative remedies, but he must also do so properly. Proper exhaustion "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.'" Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in Jones v. Bock, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. Jones also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. Id., at 923. If a complaint contains claims, some of

5

which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims.  Id., at 924-26.

The West Virginia statute pertaining to the requirement that prisoners exhaust remedies is found at West Virginia Code § 25-1A-2(a), which provides as follows:

> (a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; *Provided*, That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

The Code also requires the Commissioner of the Division of Corrections and the Executive Direction of the Regional Jail Authority to establish administrative procedures for processing prisoners' complaints about the conditions of their confinement. W. Va. Code § 25-1A-2(b).

The West Virginia Regional Jail and Correctional Facility Authority ("the Authority") has promulgated its procedures through the publication of its "Handbook of Inmate Rules and Procedures," which contains an "Inmate Request and Grievance Procedure." W. Va. C.S.R. § 94-5-2 (The Handbook is adopted by reference).  The procedure calls for a grievance to be addressed in writing to the Administrator, with the availability of an appeal to the Chief of Operations of the Authority and, ultimately, to the Office of the Executive Director.  (Handbook, at 11-12.)  The Authority has also

published Policy & Procedure Statement Number 14003 to the same effect.

The court is presented with conflicting sworn statements with respect to Plaintiff's alleged failure to exhaust administrative remedies. The Jail Defendants rely on the affidavit of John L. King II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, which states that upon review of the Inmate Correspondence and Grievance Appeal files, he did not find an Inmate Grievance appeal from Plaintiff concerning this case. (# 14-2, Ex. 6, at 24-25.) Plaintiff submitted his affidavit which states, in pertinent part, as follows:

> 4) * * * I filed several grievances to John McKay, John King, and Wyetta Fredericks, Director. I also wrote several letters to John King and Wyetta Fredericks. All my grievances were denied.
>
> * * *
>
> 8) I wrote grievances to John McKay, Jail Administrator and John King, Executive Director, about Lt. Rogers' retaliation against me for filing lawsuits . . .. John McKay and John King either denied my grievance form or did not answer my letters . . ..

(# 23, at 4, 6.) Plaintiff presents no copies, exhibits or other evidence which would tend to prove that he did exhaust his remedies.

Due to the conflicting sworn statements, the undersigned proposes that the presiding District Judge **FIND** that Defendants have failed to establish, at this point in the proceedings, that Plaintiff failed to exhaust the available administrative remedies.

7

**Motion to Dismiss - South Central Regional Jail**

Upon review of Plaintiff's Complaint, the court believes that Plaintiff did not intend to sue the South Central Regional Jail, which is not a suable entity. It appears that the Jail is listed on the docket sheet as a party defendant because the Clerk entered it as such. It is more likely that Plaintiff wrote "South Central Regional Jail" in his complaint to identify the location of a given defendant (Lt. Rogers).

Plaintiff has not responded to Defendants' motion to dismiss the Jail, thus supporting the court's understanding of the matter.

The undersigned proposes that the presiding District Judge **FIND** that the South Central Regional Jail is not a suable entity.

**Motion to Dismiss - Eleventh Amendment**

In Hafer v. Melo, the United States Supreme Court held that state officials sued in their individual capacities are "persons" under section 1983. 502 U.S. 21, 23 (1991). Thus, a plaintiff may sue a state official for monetary damages in his individual capacity. Following the holding in Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995), the court must "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity."

Plaintiff's Complaint does not specify whether he is suing the defendants in their individual or their official capacity. He

8

seeks only money damages, which is indicative of an intention to sue them in their individual capacity. Plaintiff has not asserted that Defendants acted in accordance with any government policy or custom. Furthermore, the defendants' Motion for Summary Judgment raises the defense of qualified immunity, which is available only in a personal capacity suit. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Thus, Defendants apparently interpreted the suit as being filed against them personally, and not in their official capacity as employees of the State of West Virginia. Biggs, 66 F.3d at 61. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has sued Defendants in their individual, and not in their official capacity. Thus the Eleventh Amendment and the Will doctrine[2] are irrelevant.

**Motion for Summary Judgment - Standard of Review**

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[2] Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23.

> [The] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the

motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

**Motion for Summary Judgment - Qualified Immunity**

Defendants submitted a "Background" section of their Memorandum (# 15, at 1-2), in which they contend that Plaintiff was in the disciplinary lockdown section of the SCRJ for "his safety and for the safety of staff." The court interprets this "Background" section as Defendants' statement of facts. In support of their assertion that Plaintiff was fully restrained and locked down for safety reasons, Defendants cite to their Exhibit 2, affidavit of Lt. Rogers, signed on July 31, 2007, which states:

> 5. I have reviewed Inmate Short's housing records. Inmate Short is housed in Administrative Segregation because of his behavior. Inmate Short's behavior causes a serious threat to himself, other inmates, and staff. Inmate Short has made numerous threats toward staff such as, threats to build a shank and kill staff. Inmate Short both verbally and physically harasses medical staff on a daily basis. Further Inmate Short has thrown items in an attempt to assault staff and has destroyed property (Exhibit 1). Inmate Short was not housed in an Administrative Segregation as a form of retaliation, he is housed in Administrative Segregation due to his violent and uncontrollable and numerous behavior and numerous threats (Exhibit 2).

(# 14-2, Ex. 2, ¶ 5.) The Exhibits 1 and 2 cited in the affidavit

are not attached.  Defendants did provide Exhibit 3, which is a memorandum dated April 25, 2007 from Lt. Rogers to Administrator McKay, which states, in pertinent part as to Plaintiff, as follows:

> On 4/17/07 the [Administrative Segregation] Committee met on a separate occasion to speak with inmate Harvey Short. He wanted to return to general population as his time served for destruction of SCRJ property had been completed.  He was told that he would stay on Administrative Segregation until restitution was made for a television he destroyed in his section.
>
> On the following date, April 25, 2007, these inmates met with the committee:
>
> Inmate Harvey Short asked the committee to have his restraints removed in order to exercise.  Due to his recent threats towards Officers the committee denied that request.

Other documents submitted by Defendants relate to an incident on July 28, 2007, one month <u>after</u> Plaintiff filed this complaint, which describe Plaintiff's cutting of a correctional officer with a piece of broken mirror.  While the July 28 incident reports certainly indicate that Plaintiff was violent and dangerous on that date, they are irrelevant to the issue of why Plaintiff was in full restraints prior to June 28, 2007.

Conditions of confinement of state pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979).  However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach.  As noted by the United States Court of Appeals

for the Fourth Circuit in Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997), "[b]oth seek to balance the rights of prisoners and pre-trial detainees against the problems created for officials by the custodial context."

When considering Defendants' claim to qualified immunity from liability, the court must first determine whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury," show that the officials' conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If not, "the analysis ends; the plaintiff cannot prevail." Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir.2002). If, however, a plaintiff has alleged the violation of a constitutional right, we then "ask whether the right was clearly established" at the time of the asserted violation. Saucier, 533 U.S. at 201; Clem, 284 F.3d at 549. "If the right was not clearly established in the specific context of the case," then the official is entitled to immunity from suit. Clem, 284 F.3d at 549 (internal quotation marks and citation omitted). Only if a plaintiff alleges the violation of a clearly established constitutional right does his complaint survive a motion to dismiss on qualified immunity grounds.

Plaintiff asserts that he has been the victim of retaliation for filing lawsuits. Prisoners do enjoy a constitutional right to meaningful access to the courts, and prison officials do not have the power to retaliate against such right. Hudspeth v. Figgins,

13

584 F.2d 1345, 1347 (4th Cir. 1978); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). However, the inmate must point to specific facts which tend to support his allegation of retaliation. White v. White, 886 F.2d 721 (4th Cir. 1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams v. Rice, 40 F.3d 72 (4th Cir. 1994). Courts analyze prisoners' claims of retaliation with skepticism. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (*en banc*). The failure to establish that the retaliation adversely impacted the prisoner's exercise of his constitutional rights is fatal to the prisoner's case. That is, a prisoner asserting a claim of retaliation must show that the alleged retaliatory action deprived him of his valuable constitutional right. Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. American Civil Liberties Union of Maryland, Inc. v. Wicomico Co., Maryland, 999 F.2d 780, 785 (4th Cir. 1993).

Plaintiff filed this action on June 28, 2007. Since that date, Plaintiff filed two additional lawsuits, and filed numerous documents in the actions which were already pending. Plaintiff has not suffered any lack of access to the courts, and he has not alleged that any other constitutional right was adversely affected.

Defendants have submitted exhibits which tend to show that Plaintiff was confined in administrative segregation, with full restraints when out of his cell, because of incidents in which he destroyed property and threatened others. It is not a constitutional violation to confine a prisoner to administrative segregation. In re Long Term Administrative Segregation of Inmates, 174 F.3d 464 (4th Cir. 1999).

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to show that the officials' conduct violated a constitutional right, as required by Saucier v. Katz, 533 U.S. 194, 201 (2001). Accordingly, Defendants are entitled to qualified immunity.

Plaintiff's Petition for Injunctive Relief (# 7)

Plaintiff's Petition for Injunction Relief seeks a transfer to another regional jail or to be returned to the general population of South Central Regional Jail. Since late November, 2007, Plaintiff has been housed at Southwestern Regional Jail; thus his petition is moot.

The Supreme Court of the United States has held that an inmate has no justifiable expectation that he will be incarcerated in any particular correctional facility. In Meachum v. Fano, 427 U.S. 215 (1976) and Montanye v. Haymes, 427 U.S. 236 (1976), the court held that an intrastate transfer from one prison facility to another "does not directly implicate the Due Process Clause of the

15

Fourteenth Amendment." <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983). Specifically, the court stated:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in <u>any</u> of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

<u>Id.</u> (quoting <u>Meachum</u>, 427 U.S. at 224-225). In <u>Olim</u>, the Court further wrote that "a holding that '<u>any</u> substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.'" <u>Id.</u> (quoting <u>Meachum</u>, 427 U.S. at 225). Thus, Plaintiff has no constitutional right to be incarcerated in a particular facility.

<u>Plaintiff's Motion for Default Judgment (# 16)</u>

In this motion, Plaintiff contends that Defendants did not timely answer or otherwise defend this action after service of process. The docket sheet reveals that the Marshals Service served Defendants on July 11, 2007, and that their answer or motion to

dismiss was due on July 31, 2007. On July 31, 2007, Defendants electronically filed their Motion to Dismiss or in the alternative for Summary Judgment. Thus Plaintiff's Motion has no merit, and the presiding District Judge should so **FIND**.

For these reasons, it is respectfully **RECOMMENDED** that the presiding District Judge:

1. Deny Defendants' Motion to Dismiss for failure to exhaust administrative remedies;

2. Grant the Motion to Dismiss the South Central Regional Jail;

3. Grant Defendants' Motion for Summary Judgment based on qualified immunity;

4. Deny Plaintiff's Petition for Injunction as moot (and it is without merit);

5. Deny Plaintiff's Motion for Default Judgment.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Faber and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

February 29, 2008
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge