IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HARVEY PATRICK SHORT,

      Plaintiff,

v.                          Case No. 2:07-cv-00409

JOHN McKAY, Jail Administrator,
South Central Regional Jail,
JOHN KING, Regional Jail Authority, and
LIEUTENANT RICK ROGERS,

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are Defendant's Renewed Motion for Summary Judgment (docket sheet document # 69) and Plaintiff's Cross-Motion for Summary Judgment (# 64), and Plaintiff's Motion for Appropriate Relief from the Court (# 70).  This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S CLAIMS

Beginning September 14, 2005, Plaintiff was incarcerated as a state pre-trial detainee at the South Central Regional Jail (hereinafter "SCRJ").  Since November 1, 2005, Plaintiff has filed eleven actions in this court, which name State and county officials

as defendants:

        Short v. Charnock, No. 2:06-cv-00721;
        Short v. Charnock, No. 2:06-cv-00852;
        Short v. PrimeCare Medical-WV, No. 2:06-cv-00933;
        Short v. State of West Virginia, 2:06-cv-00997;
        Short v. Carper, No. 2:07-cv-00139;
        Short v. Carper, No. 2:07-cv-00255;
        Short v. Bailey-Walker, No. 2:07-cv-00277;
        Short v. McKay, No. 2:07-00409;
        Short v. Walls, No. 2:07-cv-00531; and
        Short v. Green, No. 2:07-cv-00968.

In addition, Short has written and filed several complaints for other inmates at the South Central Regional Jail and, in some instances, signed the names of other persons on court documents.

Plaintiff's first Complaint against SCRJ officials was filed on November 1, 2006 (Short v. PrimeCare Medical-WV, 2:06-cv-00933). The complaints filed by Plaintiff on behalf of other SCRJ inmates were filed in the time period between February of 2007 and September of 2007.

Plaintiff's instant Complaint (# 2), filed on June 28, 2007, alleges that the defendants have retaliated against him by placing him in full restraints and keeping him housed in administrative segregation on account of his filing of lawsuits on behalf of himself and other inmates.  Plaintiff also claims that the defendants have discriminated against him based on his race and mental disability and have violated his rights to due process and equal protection.  (Id. at 4-8).  Plaintiff seeks compensatory damages in the amount of $250,000 and punitive damages in the amount of $550,000.  Id., at 5.

2

**FACTUAL BACKGROUND**

From a review of the Joint Exhibits submitted by the parties and the testimony taken during the evidentiary hearing on October 7, 2008, the undersigned has determined the following facts:

Plaintiff arrived at the South Central Regional Jail (hereinafter "the SCRJ") on September 14, 2005. He was immediately placed on suicide watch, and classified as "special management." (# 56 at 10; Ex. 1, # 66-2 at 2). Plaintiff continued to be classified as "special management" through January of 2006. (# 66-2 at 5, 7,9, and 11; Ex. 1, # 66-3 at 2). On December 12, 2005, Plaintiff was involved in a fight with his cell mate, John Crawford, whom Plaintiff has described as a known violent inmate. (# 56 at 11; Ex. 3, # 66-9 at 1-16). Although the parties have submitted a number of incident reports concerning this fight, they have not indicated what, if any, discipline Plaintiff received as a result of this altercation.

According to the Administrative Segregation Committee report dated February 15, 2006, Plaintiff is listed as being in Protective Custody (hereinafter "PC"). No explanation is given for this classification. (Ex. 1, # 66-3 at 3). Plaintiff remained as a PC classification, apparently at his own request, until June 1, 2006 (# 66-3 at 5, 7 and 9; Ex. 1, # 66-4 at 1, 3 and 5), when he was moved into the General Population classification (hereinafter "Gen. Pop."). (# 56 at 12). On May 15, 2006, while Plaintiff was on PC,

3

he was involved in an altercation with inmate Francis Owens. Plaintiff sprayed Owens with cleaning solution and Owens threw spoiled milk on Plaintiff. Plaintiff was charged with a rule violation and received 10 days in lockdown, but apparently remained on the PC unit. (Ex. 4, # 66-10 at 1-9). He was to be released from lockdown on May 28, 2006. (Id. at 8).

On June 28, 2006, Plaintiff was allegedly involved in another fight with inmate Dewayne Nomar on section C-6. (Ex. 5, # 66-7 at 2; Ex. 11, # 66-13 at 22). Plaintiff was charged with another rule violation and, while the charges were pending, Plaintiff was moved to C-23, and placed on a keep separate list, in order to keep him separated from Nomar. (Ex. 5, # 66-7 at 2). It is unclear whether Plaintiff was sanctioned for this altercation. The parties have not provided the court with any disciplinary findings concerning this incident.

On July 22, 2006, Plaintiff was allegedly involved in another fight with inmate Travis Camp on C-2. (Ex. 6, # 66-7 at 4). According to the incident report, Plaintiff was moved to section C-6 and he and Camp were put on the keep away list. Plaintiff is not listed anywhere on the August 16, 2006 Ad. Seg. Committee report. However, according to the August 30, 2006 report, Plaintiff was on lockdown. (Ex. 1, # 66-4 at 10). The report states that Plaintiff did not meet with the Ad. Seg. Committee on that date. On the September 8, 2006 report, Plaintiff requested and was returned to

4

Gen. Pop. (and presumably remained on section C-6).  (Id. at 17).

On January 23, 2007, Plaintiff got upset and destroyed a television and a water fountain in section C-6.  Plaintiff was charged with rule violations for these actions and he was moved to section A-4, which is an Ad. Seg. unit, prior to his disciplinary hearing.  (Ex. 7, # 66-7 at 5-20).  The parties have submitted the various incident reports, notices of hearing and disciplinary findings related to the destruction of property charges.  (Id.)  On January 29, 2007, Plaintiff was placed in lockdown for 30 days as a sanction for this conduct, which he served on section A-4.  (Id. at 19-20; Ex. 4, # 66-10 at 9).  The disciplinary findings also imposed a restitution requirement.  (Ex. 7, # 66-7 at 19-20).

On January 29, 2007, SCRJ officials attempted to house inmate Lyle Courtney with Plaintiff in A-4.  Plaintiff threatened violence if anyone was housed with him.  (Ex. 7, # 66-7 at 21).  Plaintiff was charged with more rule violations for this conduct (Id.); however, the parties have not provided any information concerning the disciplinary findings or sanctions Plaintiff received for those infractions.

In the January 31, 2007 Ad. Seg. Committee report, Plaintiff is listed as being on lockdown, and he did not chose to meet with the Ad. Seg. Committee.  (Ex. 1, # 66-4 at 19).

On February 14, 2007, Plaintiff threw liquid on Correctional Officer Matthew Ranson.  (Ex. 8, # 66-11 at 2).  On February 16,

2007, Plaintiff threw liquid on Correctional Officer Christopher Rollins. (Ex. 8, # 66-11 at 3-12). On March 11, 2007, Plaintiff threw liquid on Correctional Officer Chris Mason. (Ex. 9, # 66-12 at 2). On March 12, 2007, a disciplinary hearing was held and Plaintiff received a total of 35 days on lockdown as a sanction for tampering with the locks on his cell and throwing liquid on the correctional officers. (Ex. 8, # 66-11 at 11-12; Ex. 9, # 66-12 at 4-13). His release date from lockdown was April 16, 2007. (Id. at 4-13).[1]

On March 26, 2007, Plaintiff was moved to section A-2, which is a PC unit. On March 28, 2007, Plaintiff was listed on the Ad. Seg. Committee report as being on PC and the report states that he did not meet with the Ad. Seg. Committee. (Ex. 1, # 66-5 at 5-6).

On April 11, 2007, Plaintiff is listed in the Ad. Seg. Committee report as being on lockdown, and that he did not meet with the Ad. Seg. Committee. (Ex. 1, # 66-5 at 8).

On April 16, 2007, Plaintiff was reclassified to Ad. Seg. with no further explanation, other than to say that "per Lt. Rogers Harvey Short is now on Administrative Segregation." (Ex. 1, # 66-5

---

[1]    Plaintiff completed his 30 days on lockdown as the discipline for the destruction of SCRJ property on February 25, 2007. However, he remained on lockdown until April of 2007, presumably due to the additional sanctions he received for his other rules violations. According to the Ad. Seg. Committee reports during that time period, Plaintiff did not meet with the Ad. Seg. Committee.

at 9).  According to the Joint Exhibits, it appears that Plaintiff was housed on section A-2 at that time.  (Ex. 11, # 66-13 at 2-3).

On April 17, 2007, Plaintiff filed grievances that asserted, <u>inter alia</u>, that Plaintiff was being harassed because he had filed lawsuits.  (Ex. 11, # 66-13 at 10-12).  The grievances also asserted that Plaintiff was being poisoned by the nurses and that correctional officers were working as undercover federal agents and spying on him.  (<u>Id.</u>)

Plaintiff met with the Ad. Seg. Committee on April 17, 2007, and requested that he be returned to Gen. Pop. because he had served his time for the destruction of property.  (Ex. 1, # 66-5 at 11).  At that meeting, Plaintiff was told that he would remain on Ad. Seg. until restitution was made for the property he had destroyed.  (<u>Id.</u>)  Apparently, at that time, Plaintiff was making restitution payments, but still owed over $1,000 in restitution.

On April 18, 2007, Plaintiff allegedly threatened to shank Sergeant Adkins and Correctional Officer Mason.[2]  (Ex. 11, # 66-13 at 7-8, 13).  Plaintiff was placed on full restraint restrictions by Sergeant Adkins.  (<u>Id.</u> at 8).  Full restraint restrictions require that an inmate be placed in leg irons, handcuffs and a belly chain every time he is taken out of his cell, and that three correctional officers accompany the inmate whenever he is out of his cell.  (<u>Id.</u>)  Plaintiff was charged with rules violations for

---

[2]  Plaintiff denies that he made these threats.

this conduct.  A disciplinary hearing concerning these charges was held on April 25, 2007 and Plaintiff was given 10 days on lockdown (<u>Id.</u> at 14-21).

At the Ad. Seg. Committee meeting on April 25, 2007, Plaintiff asked that his restraints be removed during his exercise period. According to the report, this request was denied because of Plaintiff's recent threats to officers.  (<u>Id.</u>)

On May 11, 2007, Plaintiff apparently made threats in a grievance he submitted concerning the distribution of a newspaper in his section.  In the grievance, Plaintiff threatened to kill another inmate, and used obscene language.  (Ex. 12, # 66-14 at 2). Plaintiff received 10 days on lockdown as a sanction for this conduct.  (<u>Id.</u> at 33-5).

According to the Ad. Seg. Committee reports of May 9, May 23 and June 6 of 2007, Plaintiff did not meet with the Ad. Seg. Committee on those dates.  However, on May 13, 2007, Plaintiff filed grievances about his inability to exercise because he was in full restraints.  (# 56 at 8).  It appears that the court has not ben provided with the grievance documents.  According to the June 18, 2007 Ad. Seg. Committee report, Plaintiff met with the Ad. Seg. Committee and asked if he could be taken off restraints.  The Committee refused to do so because of Plaintiff's past behavior. (Ex. 1, # 66-6 at 8).  Then, on June 28, 2007, Plaintiff filed the instant lawsuit.

According to the July 5, 2007 Ad. Seg. Committee report, Plaintiff met with the Committee and again asked that his restraints be removed in order to exercise. (Ex. 1, # 66-6 at 10). He also asked the Committee if they were aware that he was suing them. (Id.) According to the report, the Committee members stated that they could not discuss pending litigation. (Id.) Plaintiff also allegedly accused SCRJ officials of bringing someone in to spy on him and discriminate against him. (Id.) Plaintiff was kept on Ad. Seg. at that time. (Id.)

On July 5, 2007, Plaintiff also filed a grievance in which he accused Lieutenant Rogers of practicing racism by taking a white inmate who had assaulted a correctional officer off of restraint restrictions, but leaving Plaintiff on full restraint restrictions. (Ex. 13, # 66-15 at 2).

On July 9, 2007, Plaintiff threw water on Correctional Officer Nick Frye. (Ex. 13, # 66-15 at 3). It appears that Plaintiff received 15 days on lockdown for this conduct. (Id. at 4).

On July 18, 2007, Plaintiff again met with the Ad. Seg. Committee and requested that he be allowed daytime recreation because he was falling down at night, due to the restraints and the "black box." Apparently, First Sergeant Jarrett said he would discuss that request with Lieutenant Rogers. Plaintiff remained on Ad. Seg. (Ex. 1, # 66-6 at 12).

On July 28, 2007, Plaintiff was involved in an altercation with correctional officers that led to the cutting of Officer John Walls with a broken piece of mirror.   This incident led to Plaintiff being sanctioned by an additional 10 days on lockdown, which was imposed on August 3, 2007.[3]   (Ex. 13, # 66-15 at 5-15).

According to the August 1, August 15 and August 30, 2007 Ad. Seg. Committee reports, Plaintiff was on Ad. Seg. and chose not to meet with the Ad. Seg. Committee.   (Ex. 1, # 66-4 at 11-16).

The undersigned is not in possession of any Ad. Seg. Committee reports for the meetings that occurred between August 31, 2007 and the present, and cannot verify what happened at those meetings. However, according to the testimony of SCRJ Administrator John McKay at the evidentiary hearing on October 7, 2008, on November 8, 2007, Plaintiff allegedly made threats to another inmate, and on November 20, 2007, Plaintiff allegedly threatened to kill himself. (# 56 at 15-16).

On November 28, 2007, Plaintiff was transferred to the Southwestern Regional Jail (hereinafter "the SWRJ") for a court appearance.   (Id. at 16, 67).   Plaintiff was kept on Ad. Seg. at the SWRJ, but had no restraint restrictions.   (Id. at 68).

---

[3] This incident is the subject of Plaintiff's lawsuit in Case No. 2:07-cv-00531, which was filed in this court on August 28, 2007.   Lt. Rogers and John McKay are also defendants in that case, which is awaiting a ruling by United States District Judge John T. Copenhaver, Jr.

Plaintiff was returned to the SCRJ in March of 2008, and was immediately placed in Ad. Seg. with full restraint restrictions. (Id. at 69).  According to Mr. McKay's testimony, on April 16, 2008, Plaintiff requested the removal of handcuffs and the three officer restriction.  The Ad. Seg. Committee agreed to remove the handcuffs and reduce the officer requirement to two officers for a week and then to one officer for the next week.  (Id. at 30-31).

Mr. McKay further indicated that, on May 14, 2008, Plaintiff requested the removal of the one officer detail, and the Committee agreed.  Thus, Plaintiff's restrictions while out of his cell were completely lifted.  (Id. at 31-32).

According to Mr. McKay, on May 28, 2008, Plaintiff requested that he be returned to Gen. Pop.  That request was denied by the Committee, but Plaintiff was told they would revisit his request if Plaintiff's good behavior continued.  (Id. at 32).

On May 29, 2008, Plaintiff was sentenced on his second degree robbery charge and was committed to the West Virginia Division of Corrections.  Plaintiff was transferred to the Anthony Correctional Center for a 60-day mental health evaluation in late October of 2008.  Plaintiff was returned to the SCRJ on or about December 23, 2008 and remains incarcerated there as of this date.

According to Plaintiff's Reply to Defendants' Motion for Summary Judgment (# 72), Plaintiff was returned to Gen. Pop. at the SCRJ on December 23, 2008.

## ANALYSIS

As noted in the Memorandum Opinion filed by Judge Faber on March 19, 2008, Plaintiff's Complaint states a claim that the defendants have kept him in administrative segregation, and placed him in full restraints, in retaliation for having filed several civil suits against prison officials, in violation of Plaintiff's First Amendment rights. (# 36 at 3-4). Judge Faber further noted:

> In order to succeed on his First Amendment retaliation claim, the plaintiff not only needs to prove that the filing of civil suits against prison officials was a motivating factor behind his placement in administrative segregation, but that absent any retaliatory motive, the plaintiff would not have been placed in administrative segregation. Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996)(citing Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287 (1977)). Moreover, the court further recognizes that the plaintiff's "burden is high." White, 102 F.3d at 275.

(Id. at 3). It is this analysis that the undersigned must apply in addressing the defendants' Renewed Motion for Summary Judgment (# 69).

According to the defendants' motion, Regional Jail Policy and Procedure 10001 defines "Administrative Segregation" as follows:

> Administrative Segregation - A form of separation from the general jail population which limits and restricts contact with other inmates in the jail population and which is used when the continued presence of the inmate in the general population would pose a serious threat to life, property, self, staff, or other inmates, or to the security or orderly running of the jail facility. Administrative segregation may be authorized by the Administrator prior to a hearing for the violation of rules of conduct.

(Ex. 2, # 66-8 at 1). The defendants' motion then asserts:

12

Inmate Harvey Short has had an extended and troubled history during his incarceration. The record is replete with examples of his attacks on inmates, staff, and destruction of property. (Exhibits 1, 3 through 13 of Joint Submission of Exhibits)

At hand, Inmate Short was classified as Administrative Segregation. This classification was based upon the inmate's behavior, and violent actions. The classification was reviewed every two weeks, as required by policy. (Exhibit 1 of Joint Submission of Exhibits)

Given Inmate Short's behavior, there is little room for doubt the classification was proper and based upon his unruly behavior. Further, the record clearly identifies Inmate Short was properly reviewed by the Classification Committee.

(# 69 at 2-3).

Plaintiff's Memorandum of Law in opposition to Defendant's

Renewed Motion for Summary Judgment and in support of Plaintiff's

Cross-Motion for Summary Judgment asserts:

In April 2007, the Plaintiff was placed on full-restraint restriction after an argument with Sergeant C. Atkins and Officer C. Mason. However, full restraints is only authorized by jail policy if an inmate commits a physical assault on someone.

In April 2007, the Plaintiff was placed on administrative segregation. The Plaintiff never received a notice of intent of placement, a hearing, or the opportunity to present his case against being placed on administrative segregation, Exhibits A p. 7 and D pg. 53.

In May 2007 at the administrative segregation committee meeting, the Plaintiff requested the removal of the restraints and the return to general population because he had no problems warranting further administrative segregation. Lt. Rogers, David Farmer and Cheryle Stuart were present at the committee meeting. Lt. Rogers asked the Plaintiff if the Plaintiff had paid for the water fountain and television. The Plaintiff told Lt. Rogers that he was making payments. Then, Lt.

13

Rogers said the following: "Mr. Short, you are asking me to send you down the hall. Why should I do that when you have filed lawsuits against us? I am not sending you down the hall. Then, you got other inmates filing lawsuits also. I had been a police for 27 years. I know your handwriting. You are filing lawsuits for other inmates. You are keeping stuff stirred up. Don't worry about other inmates. Worry about Harvey Short. Why should I take you off of administrative segregation and restraints so you can exercise and send you down the hall and make your stay easier here when you are making my job hard by filing lawsuits? If you want to be a jailhouse lawyer that is fine with me." "Are you taking your meds," asked Lt. Rogers. The Plaintiff said "Yes." "Take your meds," replied Lt. Rogers, Exhibits A p. 2-3 and D p. 59. As a result of Lt. Rogers' statements and actions above, the Plaintiff filed grievances and appeals with John McKay, Jail Administrator and John King, Chief of Operations. They both denied all of the Plaintiff's grievances and appeals, Exhibits A p. 4 and D p. 56.

From May 2007 until the Plaintiff was transferred to Southwestern Regional Jail on November 28, 2007, Lt. Rogers exclusively denied all of the Plaintiff's requests to have the restraints removed and to return to general population as a result of filing lawsuits and assisting other inmates in doing the same, Exhibits A p. 4-5 and D p. 56.

During some of the committee meetings, Lt. Rogers explicitly told the Plaintiff that the restraints would not come off, and the Plaintiff would stay on administrative segregation until the Plaintiff left the jail, Exhibits 1 p. 5 and D p. 60.

(# 65 at 2-5).

Although Plaintiff admits that he received some disciplinary infractions for rule violations, he maintains that he was told that he would not return to Gen. Pop. because of the filing of the lawsuits, not because of the disciplinary infractions. (Id. at 5-6). Plaintiff further asserts that, because he had no disciplinary infractions from March 31, 2008, when he returned to the SCRJ from

the SWRJ, until October 15, 2008, there was no justification for keeping him on Ad. Seg.  (Id. at 6).

<u>Plaintiff's First Amendment Claim</u>

Turning first to Plaintiff's First Amendment claim, other than Plaintiff's own allegations, which he has only supported with his own affidavit and his own testimony at the evidentiary hearing, Plaintiff has not provided any support for his allegation that Lt. Rogers specifically stated that Plaintiff would remain on Ad. Seg. because he had filed lawsuits for himself and others.  David Farmer and Cheryle Stuart, the other two members of the Ad. Seg. Committee who were present at the meeting(s) where Lt. Rogers allegedly made such statements, were subpoenaed to testify at the evidentiary hearing held on October 7, 2008.  However, Plaintiff elected not to call them as witnesses, and a proffer was made to the court that they both would have denied hearing such statements by Lt. Rogers. (# 56 at 52-53).

Furthermore, the record before the court undisputedly demonstrates that Plaintiff was initially placed on Ad. Seg. because of his disciplinary infractions, and there is ample evidence to demonstrate his repeated altercations with other inmates and staff, which continued while he was on Ad. Seg. for the disciplinary infractions.

Accordingly, Plaintiff has not presented any evidence to support his claim that the filing of lawsuits was a motivating

15

factor behind his being kept on Ad. Seg.; nor has Plaintiff demonstrated that he would not have been put on Ad. Seg. but for the filing of the lawsuits. Likewise, Plaintiff has not demonstrated that he was kept in full restraints because of the filing of the lawsuits.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact concerning Plaintiff's First Amendment retaliation claim, and that Plaintiff has failed to satisfy the required elements of such a claim. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim.

<u>Plaintiff's Due Process and Equal Protection Claims</u>

Plaintiff's Complaint also alleges that his rights to due process and equal protection under the Fourteenth Amendment were violated by the defendants. These claims were not resolved when the District Court denied the defendants' Motion to Dismiss, and they are not specifically addressed in the defendants' Renewed Motion for Summary Judgment. Thus, the court will address these claims pursuant to 28 U.S.C. §§ 1915A and 1915(e).

Plaintiff's Complaint pled his due process and equal protection claims in the same vein as his First Amendment retaliation claim - that the defendants were punishing him for

16

doing something he is allowed to do under federal law - that is, file lawsuits. (# 2 at 8). Plaintiff's Cross-Motion for Summary Judgment and related documents further assert that Plaintiff's due process rights were violated because the defendants did not comply with the procedures under Title 95 of the State Code of Rules concerning Special Management of Inmates. Specifically, Plaintiff contends that he was not given "notice of the intent, a hearing or the opportunity to present my case against it as required under Title 95 Special Management Inmates 95-1-12" before he was placed in Ad. Seg. in April of 2007. (# 64-2, Ex. A, ¶¶ 32-33). Plaintiff further contends that, at all of the Ad. Seg. Committee meetings he attended, the Committee never reviewed the reasons for his initial placement on Ad. Seg. or if those reasons continued to exist. (Id., ¶¶ 33, 34).

In support of this claim, Plaintiff's Memorandum of Law states:

> A prisoner who is claiming the deprivation of a state created liberty interest must specify which statute or regulation created the interest.  The alleged state created liberty interest should only afford due process protections if its restriction or deprivation either 1) creates an "atypical and significant hardship" by subjecting the prisoner to conditions much different from those ordinarily experienced by a large number of inmates serving their sentence in the customary fashion or 2) inevitably affects the duration of the prisoner's sentence.

> * * *

> In the instant case, the Plaintiff states that Title 95 of the West Virginia Code of State Rules creates the

17

> liberty interest, see Title 95 subsection 95-1-12 Special Management Inmates attached as exhibit.  The Plaintiff states that the following three (3) provisions of Title 95 subsection 95-1-12 have been violated by the Defendants placing the Plaintiff in administrative segregation: 1)12.4; 2) 12.5; and 3) 12.6.  The plaintiff was not given a hearing as required by 12.4 before being placed on administrative segregation. The Plaintiff also did not receive a notice of intent of placement, appearance at a hearing, and an opportunity to present his case to a hearing officer as required by 12.5.  In addition, the Plaintiff states that his status was not reviewed to determine if the reasons for the initial placement on administrative segregation continued to exist as required by 12.6.

(# 65 at 21-22).  Plaintiff further alleges that, while he has been on Ad. Seg., he has been denied certain opportunities available to inmates in Gen. Pop., such as hygiene items, recreation, the ability to communicate with his court-appointed counsel for his criminal case, the ability to attend religious services, and the ability to participate in substance abuse treatment.  (# 64-2, Ex. A at ¶ 35; # 65 at 22-23).  Plaintiff asserts that he has been subjected to an "atypical and significant hardship" as a result of being kept on Ad. Seg., which he contends amounts to punishment in violation of the Due Process Clause.  See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Bell v. Wolfish, 441 U.S. 520 (1979); Wolff v. McDonell, 418 U.S. 539, 556-557 (1974).

The question is whether Plaintiff has a liberty interest, protected by the Due Process Clause of the Constitution, in not being classified in administrative segregation.  If he has no liberty interest protected by the Due Process Clause, the

18

violations of procedural due process which he alleges are not
actionable. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).
It appears to the Court that Plaintiff has missed this point; he
devotes a significant portion of his Memorandum to arguments
concerning the procedural violations of which he complains. The
alleged procedural flaws do not themselves establish a violation of
the Due Process Clause if he has no liberty interest to protect.

It is well settled that placement of inmates in administrative
segregation is a valid means of minimizing a "threat to security of
the institution, threat to safety of other residents or Jail staff,
etc." Jackson v. Bostick, 760 F. Supp. 524, 528 (D. Md. 1991). In
Hewitt v. Helms, the Supreme Court found as follows:

> It is plain that the transfer of an inmate to less
> amenable and more restrictive quarters for nonpunitive
> reasons is well within the terms of confinement
> ordinarily contemplated by a prison sentence. * * *
> Accordingly, administrative segregation is the sort of
> confinement that inmates should reasonably anticipate
> receiving at some point in their incarceration.

459 U.S. 460, 468 (1983)(overruled on other grounds). Accordingly,
the Court in Hewitt found that there is no independent liberty
interest that is protected under the Due Process Clause of the
Fourteenth Amendment in remaining in the general population of a
correctional facility. As previously noted by plaintiff, however,
the Supreme Court has recognized that a state may create a liberty
interest protected by the Due Process Clause through its enactment
of certain statutory or regulatory provisions. Id. at 469.

19

In Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Supreme Court recognized that

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. [Citation omitted.] But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [citations omitted], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

The Court noted that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. at 485 (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)).

> We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. * * * Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. * * * Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

Id., at 486. The Court rejected the position that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Id. at 484.

Plaintiff has alleged that administrative segregation does impose atypical and significant hardships on him in relation to the ordinary incidents of prison life in that he allegedly has been denied hygiene items, attorney visitation, church services, and rehabilitation.

In <u>Beverati v. Smith</u>, 120 F.3d 500 (4th Cir. 1997), the Fourth Circuit held that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given <u>no</u> educational or religious services, had failed to meet the <u>Sandin</u> standard.

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.
>
> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest. And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

500 F.3d at 504.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to show that the conditions in

Administrative Segregation to which he has been subjected constitute atypical and significant hardship on him in relation to the ordinary incidents of prison life. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's due process claim fails to state a claim upon which relief can be granted.

Plaintiff's Reply/Cross Motion for Summary Judgment documents also address his equal protection claim, asserting that other inmates, who had committed as many or more rule violations as Plaintiff, were placed on Ad. Seg., but were permitted, at some point, to go back to Gen. Pop., while Plaintiff was not. Plaintiff further asserts that, in May 2007, none of those inmates had filed a lawsuit, like Plaintiff had. (# 64-2, Ex. A, ¶¶ 37, 38).

Plaintiff's Affidavit further states:

(37) Since I have been on administrative segregation, I have witnessed Lt. Rogers take the following inmates off of administrative segregation despite the fact that these inmates had committed violent acts against jail staff and other inmates, sexually assaulted a female inmate, sexually assaulted a male inmate, had an officer smuggle tobacco into the jail, destroy property, and multiple other infractions of jail rules: Charles Skiles, Brandon Cantrell, Michael Cottrell, Joseph Eads, Andre Williamson, Troy White, Charles E. Moore, Jamel Mitchell, Joseph Casto, and others. All of the above inmates except one were repeaters on administrative segregation. They had been on administrative segregation 2 or 3 times, and Lt. Rogers kept taking them off;

(38) In May 2007, none of the inmates in paragraph # 37 filed a lawsuit like I did. At a later date, Cottrell, Cantrell, Eads, and Williamson filed lawsuits. Williamson sued Charleston Police Officers. Cantrell filed a writ of habeas corpus. Cottrell and Eads sued

jail employees, but Cottrell voluntarily dismissed his
lawsuit.

(# 64-2, Ex. A, at 9-10).

Plaintiff's Memorandum of Law further states:

For an inmate to prevail on an equal protection claim,
he/she must prove the following: 1) that similarly
situated inmates have been intentionally treated
differently by the government; and 2) that there is no
rational relation between the dissimilar treatment and
any legitimate government interest, Turner v. Safely, 482
78, 89 (1987).

The disparate treatment must occur among prisoners
similarly situated, U.S. v. Roberts, 915 F.2d 889, 891
(4th Cir. 1990).

The Plaintiff, in the case sub judice, was similarly
situated with several other inmates placed on
administrative segregation in 2007 and 2008 at SCRJ.
However, all the other inmate[s] on administrative
segregation have been taken off. That Lt. Rogers took
them off administrative segregation. There is no
rational relation between the dissimilar treatment of the
Plaintiff and any legitimate government interest.

The Plaintiff claimed in his initial Complaint that
the Defendants denied him equal protection of the law.

(# 65 at 25).

Plaintiff's "equal protection" claim is really an extension of
his retaliation claim. He is asserting that Lt. Rogers kept him on
Ad. Seg. because he had filed lawsuits. As previously found,
Plaintiff has not demonstrated that, but for the filing of
lawsuits, Plaintiff would not have been housed in Ad. Seg.
Furthermore, Plaintiff has not alleged that a fundamental right or
a suspect classification such as race or gender, is at issue in his

equal protection claim.[4]   Accordingly, the proper inquiry is whether the challenged classification is rationally related to an important governmental objective.  <u>Moss v. Clark</u>, 886 F.2d 686 (4th Cir. 1989).  Petitioner has no fundamental right to be housed in Gen. Pop., and the defendants have sufficiently demonstrated that housing inmates, such as Plaintiff, who have repeatedly violated prison rules and engaged in altercations with other inmates and staff, in Ad. Seg. for extensive periods is rationally related to the legitimate government interest in the safety of inmates and staff and the lack of disruption in daily prison life.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment.

<u>Plaintiff's Motion for Appropriate Relief from the Court</u>

On December 29, 2008, the Clerk docketed a Motion for Appropriate Relief filed by the Plaintiff (# 70).[5]  The motion, which was mailed by Plaintiff while he was at the Anthony Correctional Center for his 60-day evaluation, asserts that

---

[4]   Although Plaintiff's Complaint makes a sweeping statement that the defendants discriminated against him based upon his race and mental disability, Plaintiff has offered no further evidence of those claims, and merely conclusory allegations of discrimination are insufficient to state a claim.  <u>See</u> <u>Chapman v. Reynolds</u> 378 F. Supp. 1137, 1140 (W. D. Va. 1974).  The inmates who Plaintiff alleges were released from Ad. Seg. were both black and white. Thus, Plaintiff cannot demonstrate discrimination based upon race.

[5]   It appears, however, that this document was received in the undersigned's chambers on December 16, 2008.

24

Defendants' counsel had not complied with the court's Order pertaining to the filing of a Motion for Summary Judgment within 10 days of the Joint Exhibits on November 14, 2008.  In fact, the Defendants' Renewed Motion for Summary Judgment was filed on December 11, 2008.  As a result, Plaintiff requests that the court order that the Defendants' counsel forfeited the right to file a Motion for Summary Judgment, and that the court should rule on Plaintiff's Cross-Motion for Summary Judgment.  Plaintiff also requested that sanctions be imposed against Defendants' counsel for "legal fees in preparing the opposition for summary judgment." (# 70 at 3).

The Order entered by the court following the October 7, 2008 evidentiary hearing set deadlines that were contingent upon the filing of the transcript from the evidentiary hearing and the Joint Exhibits filed by the parties.  The schedule set forth in the order was interrupted by Plaintiff's unexpected transfer to the Anthony Correctional Center for his 60-day evaluation.  Thus, the court expected that there would be a delay in the filing of the various documents, but did not enter a new Time Frame Order.

On November 12, 2008, Plaintiff filed an anticipatory Response in Opposition to Defendants' Motion for Summary Judgment which sets forth the summary judgment standard in conclusory fashion and simply states that the Defendants are not entitled to judgment as a matter of law.  (# 63).  That same date, Plaintiff filed his

Cross-Motion for Summary Judgment in which he clarifies his due process and equal protection claims and further argues that he is entitled to summary judgment on those claims and his First Amendment claim. (# 64). Plaintiff also filed a Reply document after Defendants filed their Renewed Motion for Summary Judgment. (# 72). Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not been prejudiced by the delay in the filing of Defendants' Renewed Motion for Summary Judgment, and the relief sought in Plaintiff's Motion for Appropriate Relief from the Court (# 70) is not warranted.

**RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Renewed Motion for Summary Judgment (# 69), which pertains to Plaintiff's First Amendment retaliation claim, and **DISMISS** Plaintiff's Fourteenth Amendment due process and equal protection claims for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B). It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Cross-Motion for Summary Judgment (# 64) and Plaintiff's Motion for Appropriate Relief from the Court (# 70).

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

February 23, 2009
Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge